IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS M. SMITH, #Y11769, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-00428-SMY |
| | ) |
| WILSON, | ) |
| LT. JOHNSON, | ) |
| SGT. BIRD, | ) |
| WARDEN BARWICK, | ) |
| C/O HANEY, and | ) |
| COUNSELOR HAGGERT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Thomas M. Smith, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims defendants failed to protect him from attacks and threats by other inmates, and requests monetary damages and injunctive relief. (Docs. 1, 10). Also before the Court are Plaintiff's motions seeking a Temporary Restraining Order ("TRO"). (Docs. 2, 11).

This case is now before the Court for preliminary review of the First Amended Complaint[1] under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the pleading that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune

---

[1] Plaintiff filed his First Amended Complaint (Doc. 10) before the Court completed review of the original Complaint (Doc. 1). The First Amended Complaint supersedes and replaces the original Complaint. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).

1

defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 10): On March 18, 2025, other inmates housed on Plaintiff's wing learned about the nature of his criminal conviction and threatened to stab and throw feces and boiling grease on Plaintiff and his cellmate (Doc. 10, p. 3). Plaintiff immediately hung blankets to block the cell and barricaded the door. Plaintiff used a text app to notify his father of the threats, asking him to contact the Intelligence Unit. Plaintiff informed an unnamed officer about the threats but was told to wait for the day shift.

The next morning, Plaintiff's father spoke by phone to Defendant Intelligence Officer Wilson, who said he would speak to Plaintiff (Doc. 10, p. 4). Later that day, other inmates threw a "feces bomb" into Plaintiff's cell. Plaintiff reported this to Defendant Sgt. Bird, who merely laughed and told him, "That's what you get for writing grievances." *Id*. Plaintiff had written grievances in the past. Plaintiff and his cellmate had to clean up the feces without gloves or proper cleaning chemicals. Throughout the rest of the day, other inmates issued threats to stab Plaintiff and his cellmate.

The following day, another feces bomb was thrown into the cell. Plaintiff and his cellmate requested Defendant Lt. Johnson to move them to protective custody ("PC"). Johnson replied that he was not doing PC paperwork and suggested Plaintiff could refuse housing, take a ticket, and go to segregation (Doc. 10, p. 4). Plaintiff declined this option because his safety had been threatened if he went to segregation, where he might be celled with inmates in the gangs that issued the threats. He believed he would be safer staying barricaded in his cell.

Between March 18 and March 25, 2025, Plaintiff and his cellmate did not leave their cell, skipping recreation, chow, and showers for fear of attack (Doc. 10, p. 4). Plaintiff has been unable

to eat or sleep and is suffering anxiety and extreme exhaustion (Doc. 10, p. 5). Plaintiff's father contacted the warden (Defendant Barwick), IDOC Director, and state police to report the threats.

Plaintiff was interviewed by Intel Officer Redman on or about April 1, 2025. Redman threatened to put Plaintiff in segregation if he kept having his father call the state police and would make sure Plaintiff got a cellmate from an opposing gang. He forced Plaintiff to sign a statement saying he does not fear for his safety.

On or about April 3, 2025, Plaintiff told Defendant Counselor Haggert about the threats and incidents. Haggert told Plaintiff to write a grievance. Plaintiff informed her that no grievance forms had been available in his housing unit for some weeks, and he had run out of extra copies. Haggert responded, "well, I guess you're fucked," and walked off laughing (Doc. 10, p. 5).

On April 25, 2025, Defendant Correctional Officer Haney and another officer conducted a "bogus shakedown" on Plaintiff's neighbor. Haney then knocked on Plaintiff's door and told him, "If you help him write a grievance we will fuck your shit up next" (Doc. 10, p. 6). Grievance forms are still not available, and Plaintiff fears that filing grievances will not help him and cause him to suffer more.

Other inmates have extorted money from Plaintiff and forced him to do their "legal work" to avoid fatal violence, in the absence of any help from staff.

Plaintiff seeks a transfer to Big Muddy Correctional Center ("BMRCC") (Doc. 10, p. 6). He asserts he has already been approved for transfer to that institution and he is just waiting for availability of a bus (Doc. 2, p. 2). He alternatively requests a transfer (with his cellmate) to another housing unit in Pinckneyville (Doc. 11, p. 2).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

>Count 1: Eighth Amendment failure to protect claim against Wilson, Johnson, Bird, Barwick, and Haggert.
>
>Count 2: First Amendment retaliation claim against Bird and Haney.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Preliminary Dismissals

To the extent Plaintiff is attempting to state a constitutional claim because the grievance process has been rendered unavailable to him due to staff conduct and a lack of access to grievance forms, the claim is dismissed. Inmates do not have a constitutional right to an effective grievance procedure. *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Additionally, the failure of prison officials to follow their own procedures also does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). Therefore, Plaintiff cannot bring a constitutional claim against any defendant solely because he is unable to access and use the grievance process.

## Discussion

### Count 1

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To state a claim for failure to protect, a plaintiff must plead facts suggesting he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id*.;

*Pinkston*, 440 F.3d at 889.

The First Amended Complaint states a viable Eighth Amendment claim against Wilson, Johnson, Bird, Barwick, and Haggert.  Plaintiff alleges that he informed each of these defendants of the attacks and threats against him and his cellmate, but they failed to take any steps to protect them.  Count 1 will proceed for further review.

## Count 2

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002).  "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'"  *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).  A threat to impose penalties for future speech violates the First Amendment.  *See Fairley v. Andrews,* 578 F. 3d 518, 525 (7th Cir. 2009); *Beatty v. Henshaw,* 826 F. App'x 561, 563 (7th Cir. 2020).

Plaintiff claims Bird refused to help him after the feces bomb was thrown into his cell because he had filed grievances and that Haney later threatened to shake down Plaintiff's cell or mess up his property if he helped another inmate write a grievance.  Plaintiff's allegations suggest that Haney's threat deterred him from writing grievances.  Plaintiff has sufficiently stated a retaliation claim, and Count 3 may proceed against Bird and Haney.

## Injunctive Relief

Because the Complaint includes a request for injunctive relief, this matter will proceed against Defendant Barwick in his official capacity as Warden of Pinckneyville Correctional Center with regard to the request for injunctive relief.  *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th

Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

### Pending Motions

Plaintiff filed two motions seeking a TRO (Docs. 2, 11). His March 28, 2025 motion asserts that he is "under threat of fatal violence," his requests for help have been ignored by Pinckneyville staff, and he has "exhausted all other remedies" including having his father contact outside agencies (Doc. 2, p. 1). Plaintiff's April 28, 2025 motion states the Intel Unit has threatened him into silence after the Illinois State Police contacted them, inmates continue to threaten him, and he still has no access to grievance forms (Doc. 11, pp. 1-2). As relief, Plaintiff requests an order for defendants to immediately transfer him and his cellmate Adam Brown-Windle to BMRCC or housing unit 6A (Doc. 2, p. 2; Doc. 11, p. 2).[2]

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1).

Without expressing any opinion on the ultimate merits of Plaintiff's claims for relief, the Court concludes that a TRO should not issue at this time. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. Both Motions for a Temporary Restraining Order (Docs. 2, 11) are therefore

---

[2] The Court notes that Plaintiff, as a nonlawyer proceeding *pro se*, cannot represent another individual or seek relief for that person. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (*pro se* prisoner cannot represent a class of inmates).

**DENIED**.

### Disposition

The Complaint states colorable claims in Count 1 against Wilson, Johnson, Bird, Barwick (in his individual capacity), and Haggert; and in Count 2 against Bird and Haney.

The Clerk shall prepare for Wilson, Lt. Johnson, Sgt. Bird, Warden Barwick (in his individual and official capacity), C/O Haney, and Counselor Haggert: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes

the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 6, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.